UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM A. HILL,   Case No. 04-72897
   Honorable Patrick J. Duggan
    Petitioner,

v.

THOMAS BIRKETT,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 28, 2007.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Petitioner William A. Hill, a state prisoner incarcerated at Parnall Correctional Facility in Jackson, Michigan[1], has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is being held in violation of his constitutional rights. Following a jury trial, Petitioner was convicted of voluntary manslaughter and possession of a firearm during the commission of a felony in the Wayne County Circuit Court in 2001. Petitioner was sentenced to 6-15 years for the manslaughter conviction and a mandatory 2 years for the felony firearm conviction. For the reasons stated below, the

---

[1] Normally, the Court would order that the caption of the case be amended to reflect that the proper respondent in this case is Harold White, the warden of Parnall Correctional Facility in Jackson, Michigan, the current location of Petitioner. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts. However, because the Court is denying the petition, it will not do so in this case.

petition for writ of habeas corpus is denied.

I.      **Facts and Procedural History**

The Michigan Court of Appeals, the last state court to rule on Petitioner's claims, summarized the underlying facts[2] as follows:

> On November 2, 2000, defendant shot and killed the boyfriend of defendant's two-year old child's mother. The victim and defendant had a tumultuous history, including several quarrels and fights. On the day of the incident, defendant and the victim had a brief confrontation that ended in defendant shooting the victim in the chest, killing him. Police officers in the immediate area responded to the sound of gunshots, and detained defendant. At that time, defendant was unarmed, and told the police that an unknown person had come from around the house and shot the victim. The police recovered a nickel-plated automatic handgun from the scene and it was determined to be the murder weapon. At the trial, defendant testified that he shot the victim. He maintained, however, that he was not aiming at the victim when he shot his gun, but was aiming in the direction of the door. He indicated that he was acting in self-defense after the victim struck him in the back of the head with a bottle, causing him to fear for his life.

*People v. Hill*, No. 236339, 2003 Mich. App. LEXIS 359, *1-2 (Mich. Ct. App. Feb. 14, 2003).

During deliberations, the jury submitted a note to the trial judge requesting, *inter alia*, the trial testimony of Petitioner and Latina Hollingshed, the mother of Petitioner's two-year old daughter and an eye witness to the shooting. After receiving the note, the trial judge went on the record to inform the prosecutor and defense counsel about the

---

[2]These facts are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1); *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

jury's note. Addressing the jury's request for the testimony, the trial judge stated:

> And I'm going to tell them that Latina and William's testimony, it would be a huge burden to try to read that back.
>
> Now, I don't think we can do it today. I'll tell them they have to rely on their collective memories as to what those witnesses said. And there is [sic] 12 of them. They ought to be able to remember.
>
> That sound okay?

(Docket No. 18-2, 5/17/2001 Tr. at 23.) To which defense counsel replied, "Nothing from the defense, your Honor." (*Id.*) The trial judge then instructed the jury accordingly.

After the jury returned its verdict, defense counsel encountered the jury foreperson in the hallway of the courthouse where she allegedly told him "that [Petitioner] had a good case for self-defense but she believed that the [Petitioner] could not use the gun because he did not have a license to carry the weapon." (Docket No. 21-2, 6/29/01 Tr. at 7.) Based on this statement, defense counsel moved for a new trial and an evidentiary hearing, arguing that the jury foreperson, who revealed during voir dire that she had a Bachelor's degree in Criminal Justice and was familiar with certain legal terms, communicated this misstatement of the law to the rest of the jurors. (*Id.* at 5-6.) The trial judge denied defense counsel's motion for a new trial and an evidentiary hearing. (*Id.* at 19-21.)

Following sentencing, Petitioner filed a direct appeal with the Michigan Court of Appeals raising two issues:

> 1. Did the trial court commit reversible error by foreclosing any possibility of having testimony reread and denied William Hill a fair trial in violation of both

3

>           state and federal constitutions?
>
>     2.    Was appellant William Hill denied his right to a fair
>           and impartial jury where there was an "extraneous
>           influence" on the jury that affected the verdict in
>           violation of both state and federal constitutions and the
>           trial court failed to hold an evidentiary hearing on this
>           question. Therefore, appellant is entitled to a new trial
>           and/or a remand for a hearing on this constitutional
>           violation?

(Docket No. 22-2, Petitioner's App. Br. at iv.) The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Hill*, No. 236339, 2003 Mich. App. LEXIS 359 (Feb. 14, 2003)(per curiam). Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, which was denied. *People v. Hill*, 469 Mich. 908, 670 N.W.2d 221 (Sept. 29, 2003).

On July 30, 2004, Petitioner filed a federal habeas petition which was rejected for his failure to comply with procedural filing rules. On August 6, 2004, Petitioner submitted a habeas petition that was in compliance with the filing requirements. In his petition, Petitioner raises the following sole issue for the Court's review:

> Did the trial court err when it denied the jury's request of
> having testimony re-read which denied Petitioner a fair trial
> violating the 6th Amendment of the U.S. Constitution?

(Petition, Br. at II.) On February 14, 2005, Respondent filed a response citing procedural default and lack of merit as the grounds for denying habeas relief.

Subsequently, on April 8, 2005, Petitioner filed twenty-one pages of additional materials, including a supplemental brief raising the following additional issues:

>     1.    Was Petitioner William Hill denied his right to a fair
>           trial and impartial jury where there was an "extraneous

4

influence" on the jury that affected the verdict in
violation of both state and federal constitutions?

2. Did the trial court fail to hold an evidentiary hearing on
this question? Therefore, Petitioner William Hill is
entitled to a new trial and/or a remand for a hearing on
this constitutional violation.

(Docket No. 24, Br. in Supp. of Amended Pet. at 12.) As of this date, Respondent has not responded to the additional issues raised by Petitioner.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than

[the Supreme] Court has decided on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000).[3] A state court's decision is an "unreasonable application of" clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Relief is also available under the "unreasonable application" clause "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S. Ct. at 1520; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005).[4]

## III. Applicable Law and Analysis

### A. Procedural Default of Claim Raised in Original Petition

"When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Y1st v. Nunnemaker*, 501 U.S. 797, 801, 111 S. Ct. 2590, 2593 (1991). The Sixth Circuit applies the following four-part test to determine whether a claim is procedurally defaulted:

> (1) the court must first determine that there is a state procedural rule that is applicable to the petitioner's claim and

---

[3] The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 495 (1976)).

[4] The proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Wiggins*, 539 U.S. at 521, 123 S. Ct. at 2535 (citations omitted); *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

6

> that the petitioner failed to comply with the rule; (2) the court
> must decide whether the state courts actually enforced the
> state procedural sanction; (3) it must be decided whether the
> state procedural forfeiture is an adequate and independent
> state ground upon which the state can rely to foreclose review
> of a federal constitutional claim; and (4) if the court has
> determined that a state procedural rule was not complied with
> and that rule was an adequate and independent state ground,
> the petitioner is required to demonstrate that there was cause
> for him not to follow the procedural rule and that he was
> actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001)(citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). A state procedural rule is adequate and independent if it "was 'firmly established and regularly followed by the time as of which it [was] to be applied.'" *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998)(citing *Ford v. Georgia*, 498 U.S. 411, 424, 111 S. Ct. 850, 857-58 (1991))(alterations in original).

The first three components of the procedural default test are satisfied here. In this case, Petitioner failed to comply with Michigan's contemporaneous objection rule when his defense counsel "affirmatively approved" of the trial court's handling of the jury request. *People v. Hill*, No. 236339, 2003 Mich. App. LEXIS 359, *2 (Feb. 14, 2003). Second, the Michigan Court of Appeals, the last state court to render a reasoned judgment, enforced the contemporaneous objection rule by stating that Petitioner's "[d]efense counsel indicated on the record his acquiescence in the trial court's decision to refuse the jury's request," and therefore waived the issue for appellate review.[5] *Hill*, 2003

---

[5]Moreover, even though the Michigan Court of Appeals briefly addressed the merit of Petitioner's claim in the alternative, *see Hill*, 2003 Mich. App. LEXIS 359, at *3 n.2, it did not waive the procedural default. *See Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998).

7

Mich. App. LEXIS 359, *2.  Third, the Michigan Court of Appeals's reliance on Petitioner's waiver of the trial court's handling of the jury request is an adequate and independent state ground for foreclosing review because "it does not rely on federal law" and "[i]t is firmly established and regularly followed by Michigan courts." *McKissic v. Birkett*, 200 Fed. Appx. 463, 470-71 (6th Cir. Oct. 5, 2006) (unpublished)(collecting cases); *see also People v. Carter*, 462 Mich. 206, 219, 612 N.W. 2d 144, 151 (2000)(holding that a defendant waived, as opposed to forfeited, his right to appeal when he or she "clearly expressed satisfaction with the trial court's decision to refuse the jury's request" for the testimony of four witnesses); *People v. Fetterley*, 229 Mich. App. 511, 520, 583 N.W. 2d 199, 204 (1998)(same); *People v. Crawford*, 232 Mich. App. 608, 620, 591 N.W. 2d 669, 675 (1998)(same).

    Once the first three components of procedural default have been satisfied, for a court to consider a defaulted claim on the merits a petitioner must establish (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991).  The miscarriage-of-justice exception applies in the extraordinary case where the habeas petitioner demonstrates "that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense . . . ." *Dretke v. Haley*, 541 U.S. 386, 388, 124 S. Ct. 1847, 1849 (2001).

    Petitioner has not offered any argument in support of a finding of cause and actual prejudice.  Thus, any cause and actual prejudice argument is deemed abandoned.  *Roberts*

*v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003). Furthermore, Petitioner has failed to show that he was "actually innocent of the underlying offense." Consequently, the claim asserted by Petitioner in his original petition is procedurally defaulted.[6]

### B. Claims in Amended Petition

Unlike the claim raised in his original petition, the claims raised in Petitioner's amended petition do not appear to be procedurally defaulted. As stated above, on April 8, 2005, Petitioner filed twenty-one pages of additional materials. Included in these additional materials was a brief in which Petitioner raises two issues that were not raised in his original petition. Petitioner filed the brief asserting the two new issues after Respondent filed his response to the original petition. Construing Petitioner's *pro se* § 2254 filings liberally, *see Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985)(citations omitted), this Court construes the additional materials as a request to file an amended petition. Thus, the Court must determine whether it is appropriate to allow the amended petition.

"A discrete set of Rules governs federal habeas proceedings launched by state prisoners." *Mayle v. Felix*, 545 U.S. 644, 654, 125 S. Ct. 2562, 2569 (2005)(citing Rules Governing Section 2254 Cases in the United States District Courts). Rule 11 of the Rules

---

[6]Even if the claim asserted in the original petition was not procedurally defaulted, it would not entitle Petitioner to habeas relief. As stated above, Petitioner asserts that "the trial court err[ed] when it denied the jury's request of having testimony re-read which denied a fair trial violating the 6th Amendment of the U.S. Constitution." (Original Petition, Br. at II.) Addressing a similar claim, the Sixth Circuit has stated that "[t]hose federal cases that discuss the issue of readbacks and transcript availability do so under the rubric of the court's supervisory authority over federal criminal trials, not on constitutional principles, and in any event do not establish a uniform rule." *Bradley v. Birkett*, 192 Fed. Appx. 468, 477 (6th Cir. 2006)(unpublished). Thus, Petitioner's claim lacks merit.

Governing Section 2254 Cases in United States District Courts states that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." In addition, 28 U.S.C. § 2242 provides that a habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."

Rule 15 of the Federal Rules of Civil Procedure governs pleading amendments. Where, as here, a responsive pleading has been filed, Rule 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Leave to amend a pleading, however, should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). Furthermore, Rule 15(c) provides:

> An amendment of a pleading relates back to the date of the original pleading when
> . . .
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . .

FED. R. CIV. P. 15(c).

In the habeas corpus context, Rule 15's relation back provision applies only to the extent that it does not conflict with the AEDPA's one-year limitations period on habeas corpus petitions filed pursuant to 28 U.S.C. § 2254. *See Mayle*, 545 U.S. at 650, 125 S. Ct. at 2566; *see also* 28 U.S.C. § 2244(d)(1). This one-year period does not begin to run

10

until "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[7] *Id.*

Here, Petitioner was denied leave to appeal to the Michigan Supreme Court on September 29, 2003. The judgment of the state court became final on December 29, 2003, after the time for filing a petition for a writ of certiorari from the United States Supreme Court expired.[8] Petitioner filed his original petition on July 30, 2004, well within the one-year limitations period. The amended petition, however, was filed on April 8, 2005, after the expiration of the one-year limitations period. Thus, the amended petition it is untimely, unless it relates back to the filing of the original petition.

In *Mayle*, the Supreme Court held that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650, 125 S. Ct. at 2566. "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Id.* at 664, 125 S. Ct. at 2574.

Applying *Mayle* to the case at bar, this Court does not believe that the claims in the

---

[7]"Direct review" includes review by the United States Supreme Court. *See Jackson v. Florida*, 127 S. Ct. 1079, 1083 (2007); *see also Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2003)(holding "that, under 2244(d)(1)(A), the one-year statute of limitations does not begin to run until the time for filing a petition for a writ of certiorari for direct review in the United States Supreme Court has expired"). A petition for a writ of certiorari from the United States Supreme Court must be filed within "90 days after entry of judgment" "by a state court of last resort." SUP. CT. R. 13.

[8]The last day of the 90-day period was actually December 28, 2003, which was a Sunday. When the last day of the period falls on a Sunday, the next day is considered the last day of the period. *See* FED. R. CIV. P. 6(a).

11

amended petition relate back to the claim in original petition. The facts giving rise to Petitioner's Sixth Amendment claim asserted in his original petition involve the jury's request during deliberations to have certain witness testimony re-read. (*See* Original Pet. ¶ 14.) In contrast, the facts giving rise to Petitioner's Sixth and Fourteenth Amendment claims asserted in his amended petition occurred after the jury returned a verdict and involved a statement made by the jury foreperson to Petitioner's counsel. (Amended Pet. at 16.) While both sets of facts involve the jury, it is clear that the operative facts giving rise to the claim in the original petition are "different in both time and type" than those giving rise to the claims in the amended petition. Thus, in accordance with *Mayle*, relation back is not warranted.

Nonetheless, even if relation back was warranted, the additional claims asserted in the amended petition do not have merit. In his amended petition, Petitioner claims that his Sixth Amendment right to an impartial jury was violated based on the jury foreperson's "extraneous influence" and that "[a] manifest injustice has resulted from the trial court's refusal to grant an evidentiary hearing on Petitioner['s] [] allegations of extraneous influence that affected the jury's verdict." (Amended Petition at 16-17.)

"The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to an impartial jury." *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000)(citing *Morgan v. Illinois*, 504 U.S. 719, 112 S. Ct. 222 (1992)). The leading case on juror misconduct and the Sixth Amendment right to an impartial jury is *Remmer v. United States*, 347 U.S. 227, 74 S. Ct. 450 (1954). In *Remmer*, the Supreme Court held:

> In a criminal case, any private communication, contact, or

tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reason, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.

*Id.* at 229, 74 S. Ct. 451. Since *Remmer*, however, the Supreme Court distinguished between cases involving an "extrinsic influence or relationships" from cases involving the "internal processes of the jury" when it held that a post-verdict hearing is not required based on certain juror's allegations that some jurors consumed alcohol and drugs during the trial. *Tanner v. United States*, 483 U.S. 107, 120, 107 S. Ct. 2739, 2747 (1987).

The Michigan Court of Appeals addressed Petitioner's claim in the following manner:

> To support this claim, defendant relies on defense counsel's conversation with the jury foreperson after the verdict, wherein she told him that the jury believed that defendant had a good case of self-defense but that they did not believe he could use the gun because he did not have a license to carry the weapon. Defendant maintains that this misstatement of the law was a product of the foreperson's past education in criminal justice, which he alleges constituted an extraneous influence. The trial court denied defendant's motion for a new trial, concluding that the juror's comment was not an outside influence impeding on the deliberation process, but was a reflection of her own thought process.
> . . .
> Here, we conclude that the juror's statement did not constitute an impermissible extraneous influence, but represented the juror's personal opinion. Indeed, the defendant's claim that the juror's educational background is an extraneous influence is tenuous at best. In any event, there is no evidence that the juror's statement was a product of her educational background, or that she influenced other jurors with her belief. Further, the juror promised to follow the law as instructed by the court and, before deliberations, the court

> reminded the jury that it took an oath to decide the case based on the law as instructed by it. Errors caused by a jury's misunderstanding of the instructions, the verdict form, or faulty reasoning are inherent in the verdict and cannot be challenged. *Hoffman*, *supra* at 294-295. Moreover, we "will not reward counsel's postdischarge inquiries regarding the internal thought process of the jurors." *Id.* at 291. Accordingly, the defendant is not entitled to relief on this basis.

*Hill*, 2003 Mich. App. LEXIS 359, *4-6.

The Michigan Court of Appeals' decision was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. The jury foreperson's educational background and the fact that it may have led to a misstatement of the law relate to the "internal processes of the jury" and do not constitute an "extraneous influence." Moreover, "an evidentiary hearing delving into the allegations of juror misconduct is required only where 'extrinsic influence or relationships have tainted the deliberations.'" *Garcia v. Andrews*, 2007 Fed. Appx. 0179P, at 5, 2007 U.S. App. LEXIS 11541, at *12 (6th Cir. 2007)(unpublished)(quoting *Tanner*, 483 U.S. at 120, 107 S. Ct. at 2747). Alternatively, for the above reasons, habeas relief is not warranted on the claims asserted in the amended petition.

Accordingly,

**IT IS ORDERED** that Petitioner's application for writ of habeas corpus is **DENIED**.

                                                    s/PATRICK J. DUGGAN
                                                    UNITED STATES DISTRICT JUDGE

Copies to:

William A. Hill
#348028
Parnall Correctional Facility
1780 E. Parnall
Jackson, MI 49201

Raina I. Korbakis, Esq.